[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15622
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cr-00026-RS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFREY MONROE ROY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(September 24, 2014)

Before TJOFLAT, WILSON and ROSENBAUM , Circuit Judges.

PER CURIAM:

A jury found Jeffrey Monroe Roy guilty of using a facility and means of interstate commerce to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and traveling in interstate commerce with the purpose to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), and the District Court sentenced him to concurrent prison terms of 188 months.  Roy appeals his convictions and sentences.  He challenges his convictions, and seeks a new trial, on the ground that the District Court should have granted his motion for a mistrial because the prosecutor, in opening statement, and a government witness commented on his post-*Miranda*[1] silence, in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).   Roy challenges his sentences on the ground that, in calculating his total offense level pursuant to U.S. Sentencing Guidelines Manual [hereinafter U.S.S.G.] § 3C1.1, the District Court erred in imposing a two-level obstruction of justice enhancement.  Having carefully considered Roy's arguments, we affirm his convictions and sentences.  We address first the motion-for-mistrial issue.

I.

Immediately before the trial began, the court met with counsel for the parties in its conference room to go over some of the Government's exhibits, most of

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

which defense counsel stipulated were admissible.  When the court inquired

whether there were any "particular problems on the horizon," the prosecutor said,

> [**PROSECUTOR**]:  No, no, sir. The only thing I would
> somewhat bring your attention to, my understanding is at this
> point the Defendant does expect -- or is expected to testify.  He
> does have two prior convictions, two prior felony convictions
> from 1986.  One is for kidnapping and one is for an assault.  He
> was released from prison on those convictions in about 2006.  I
> do not plan to bring them in as 404(b), but I just want to make
> the Court aware of them, should he open the door when he
> takes the stand for impeachment purposes of his prior
> convictions.

The court then said, **"**[b]ut if he testifies, it's -- you know, that's ---."  And, in

response, defense counsel said, "he's fair game."  After the court repeated the

words "fair game," defense counsel volunteered, "[a]nd he may change his mind

during the trial, Judge, I mean, you just never know."

During the prosecutor's opening statement, she stated, in part, the following:

> And when he's done and when he's sitting in a room
> with Sergeant Daffin and he's confronted about why he's been
> arrested and he's told what the charge is, he gets caught in
> several lies. He says, "Child? What child? I wasn't coming
> over here to meet with a child. I was coming over here to meet
> with a 30-year-old woman."

> You'll see in the evidence Jaz and Alex mentioned
> Jaz's age on multiple occasions, and at one point the Defendant
> himself recognizes her age.

> He also -- when Sergeant Daffin tells him, "No, no,
> she wasn't 30, she was a child," he said, "Oh, oh, wait, wait,
> well, I couldn't really hear. We were having some phone
> troubles."

3

> And when Sergeant Daffin says, "Uh-Uh, that's not
> going to cut it, Mr. Roy, I've listened to those phone calls and
> they're clear as day" -- and you're going to hear them, and they
> are clear as day -- at that point Mr. Roy hangs his head and
> says, "I don't want to make a statement anymore. I'm done."

Defense counsel objected on the ground that the prosecutor had improperly commented on his right to remain silent, but he requested neither a mistrial nor a cautionary instruction.[2]

Roy argues that the Constitution—specifically, the Fifth Amendment's Due Process Clause—required the court to grant a mistrial. Generally, we review issues of constitutional law *de novo*. *United States v. O'Keefe*, 461 F.3d 1338, 1346 (11th Cir. 2006). We review for abuse of discretion a district court's refusal to grant a mistrial based on a comment regarding the defendant's right to remain silent. *United States v. Reeves*, 742 F.3d 487, 504 (11th Cir. 2014). Abuse-of-discretion review grants the district court a range of choice. We will not find an abuse even if we would have ruled to the contrary, so long as the district

---

[2] Defense counsel moved for a mistrial after Sergeant Jason Daffin testified in the prosecution's case in chief. Regarding the post-arrest interrogation of Roy, Daffin said:

> There was one thing I brought up. When he was talking about meeting a 30-year-old female, I basically advised him it didn't make sense for him to be asking a 30-year-old female to send nude photographs from the neck down, at which time he dropped his head and that ceased the conversation.

The court denied counsel's motion and, instead, gave the jury an appropriate curative instruction.

court did not commit a clear error in judgment. *United States v. Drury*, 396 F.3d 1303, 1315 (11th Cir. 2005).

In *Doyle*, the Supreme Court held that the use of a defendant's silence at the time of his arrest for impeachment purposes violates due process because *Miranda* warnings carry an implicit assurance that silence will carry no penalty. *See Reeves*, 742 F.3d at 504. Specifically, the prosecutor cannot comment on the defendant's post-*Miranda* silence to impeach exculpatory testimony on the ground that the defendant did not explain his conduct at the time of his arrest. *United States v. Dodd*, 111 F.3d 867, 869 (11th Cir. 1997). However, a "single comment alone" does not necessarily constitute a *Doyle* violation where the Government does not attempt to use the improper comment to impeach the defendant. *United States v. Stubbs*, 944 F.2d 828, 835 (11th Cir. 1991). Moreover, where a defendant testifies in contradiction with his post-arrest statement, the prosecutor is entitled to challenge the defendant with that statement and to elicit for the jury whether the defendant terminated that statement. *Lofton v. Wainwright*, 620 F.2d 74, 77–78 (5th Cir. 1980) (habeas context).

*Doyle* errors are reviewed for harmless error. *O'Keefe*, 461 F.3d at 1346. A *Doyle* violation is harmless where the error has "no substantial and injurious effect or influence in determining the jury's verdict." *See Reeves*, 742 F.3d at 504 (quotation marks omitted). Such an error may be especially harmless where, as

here, the prosecutor makes no further attempt to discuss the defendant having exercised his right to remain silent. *Id.* The court's use of a curative jury instruction and the weight of the evidence of guilt may also render a *Doyle* error harmless. *United States v. Suggs*, 755 F.2d 1538, 1541 (11th Cir. 1985).

We find that the prosecutor technically erred under *Doyle*. Both her opening statement and the interviewing officer's testimony made reference to the fact that the post-arrest interview stopped due to Roy's conduct, and both references were made before he testified. The opening statement in particular was against the spirit of *Doyle*, since, as the Government points out, Roy stopped talking immediately following an allegation that his phone calls with an undercover officer had been recorded. The opening thus implied that Roy's silence was a tacit admission of guilt.

However, the *Doyle* error was harmless. The first reason that the error was harmless is that there was overwhelming evidence of Roy's guilt. Police recorded all of Roy's telephone and e-mail communications with "Jaz," the persona assumed by an undercover officer. Those communications included Roy's repeated requests for pictures of "Jaz," who he had been told was "almost fourteen," from the neck down, and explicit telephone conversations, in which Roy discussed what sex acts he wanted to engage in with "Jaz." Further, when arrested, Roy had condoms, Viagra, handcuffs, and a set of cards depicting sexual positions

6

in his truck.  The error was also harmless because the prosecutor made no further mention of Roy's silence, and the court instructed the jury both that the lawyers' statements should not be considered evidence and that it should not draw any inference of guilt from Roy's failure to talk with police.

## II.

We review *de novo* the district court's application of the Sentencing Guidelines.  *United States v. Foley*, 508 F.3d 627, 632 (11th Cir. 2007).  We review for clear error the findings of fact supporting the court's application of a particular guideline, including the obstruction of justice enhancement guideline, U.S.S.G. § 3C1.1.  *United States v. Williams*, 627 F.3d 839, 845 (11th Cir. 2010).

The Guidelines provide for a two-level enhancement where a defendant "willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and where the obstructive conduct related to the offense of conviction.  U.S.S.G. § 3C1.1.  Perjury involves deliberately false testimony concerning a material matter, not false testimony caused by confusion or mistake.  *Id*. § 3C1.1, comment. (n. 4(B)); *see also Williams*, 627 F.3d at 845.

To ensure that it does not impose an obstruction enhancement reflexively after the defendant has testified and has been found guilty, a district court must find the facts necessary to establish the elements of perjury.  *United States v.*

*Dunnigan*, 507 U.S. 87, 96–97, 113 S. Ct. 1111, 1118, 122 L. Ed. 2d 445 (1993). At sentencing, after the court finds that the defendant committed perjury, if the defendant believes that the findings of fact on which it has found perjury are inadequate, he must say so; otherwise, he cannot argue on appeal that the findings were inadequate. *United States v. Gregg*, 179 F.3d 1312, 1317 (11th Cir. 1999). Roy failed to request that the court make more detailed findings in support of its finding of perjury; his challenge to the enhancement—on the ground that the fact findings supporting it were inadequate—fails. *See Gregg*, 179 F.3d at 1317.

Nevertheless, Roy preserved for appeal the argument that the court erred in imposing the obstruction of justice enhancement. We find no error. Roy raised a Good Samaritan defense and testified that he had no intention of having sex with a child. His testimony was belied by evidence that, over the telephone, after having learned that "Jaz" was a child, he discussed whether she would partake in specific sex acts with him. He told her that he "want[ed] to do it a lot." He also testified that the condoms in his truck were not his. But he told "Jaz" that he had "stuff to be safe with" to prevent her from getting pregnant. In sum, we find no error in the court's application of the enhancement.

AFFIRMED.

8